## In re LLEWELLIN.

### JAHN v. LLEWELLIN.
Nos. 5899, 5929.

Circuit Court of Appeals, Seventh Circuit.
Nov. 19, 1936.

William Beebe, of Chicago, Ill., for appellant.

Charles A. Williams and Albert Martin, both of Chicago, Ill., for appellee.

Before EVANS and SPARKS, Circuit Judges, and LINDLEY, District Judge.

EVANS, Circuit Judge.

The dispute which this appeal is to settle involves the feasibility of the plan of reorganization which the debtor submitted for her creditor's and the court's approval. This plan, which met the approval of the District Court, is seriously challenged by appellant who is debtor's sole creditor.

Debtor's plan calls for an extension of time within which to pay her debts, which amount to $13,750 and interest, besides money advanced by mortgagee to pay taxes. She, the debtor, is the owner of a parcel of real estate located at 3643-45 Sheffield Avenue, Chicago. Upon this real estate is a three story brick six flat building and a two car garage. Each apartment contains six rooms. One apartment is occupied by debtor and her family who manage the property.

The property is encumbered by a first mortgage which secures promissory notes of the principal sum of $13,750, with ac-

crued interest of approximately $600. Appellant, in addition to holding the notes and mortgage, has paid certain taxes on the premises, aggregating $1,491.21.

In 1932, the debtor made an assignment of rents. Not all the rents were collected, however, and a new collector was designated who applied the installments of rent on taxes and interest. After these proceedings were instituted the debtor deposited the net monthly rentals with the clerk of the court. Out of the same, the 1934 taxes of $612.11 were paid. Unpaid expenses of these proceedings are less than the undistributed rentals collected during the pendency of these proceedings.

The plan, briefly stated, calls for extension of the debt for five years from date of order approving confirmation, to-wit, April, 1936. Interest at the rate of 3% per annum is to be paid semi-annually on the indebtedness of $14,369.03. The remaining 3% per annum is to be added to the principal indebtedness and paid at the end of the extension period. Debtor is to pay appellant $1,491.21 (being moneys advanced for the payment of taxes) and interest thereon at 6% from May 11, 1935. $745.65 of this sum is to be paid by the end of the first year and the balance at the end of the second year. Debtor is to pay all current taxes and current costs of operation. After the payment of costs of administration, attorneys' fees, moneys advanced on account of taxes, current and accrued interest, and current taxes, any net income shall be used to retire the principal.

Debtor is to manage said premises, do the janitor and decorating work free of charge, and is to receive for her services, the free use of the apartment now occupied by her. She is to file with the clerk of the court on the 10th day of each month an itemized statement of receipts and disbursements for the preceding month and shall deposit the net rentals monthly with the clerk. The plan contained the following:

"9. In the event that at the end of extension period the indebtedness due and owing under aforesaid trust deed is not liquidated, *or upon the failure of the debtor to make the payments required under this extension proposal, the court may order a liquidation of this estate,* as provided by law for the benefit of creditors, or may grant the mortgagee the right to foreclose, or to take any other appropriate proceedings. Debtor shall be allowed a period of sixty days grace for all payments required to be made under this extension proposal, with the exception of deposits which are to be made monthly with the Clerk of the United States District Court."

The cost of the administration was to be fixed by the court and assessed against the estate and shall constitute a prior lien on the income of the property involved herein. $346 was allowed for further attorneys' fees, $750 having been previously paid.

The clerk's office shows receipts to be as follows:

| | |
|---|---|
| Balance in Clerk's hand to | |
| April, 1936 (From May, 1935) | $ 759.91 |
| May, 1936 | 52.75 |
| June, 1936 | 239.80 |
| July, 1936 | 183.25 |
| August, 1936 | 00.00 |
| Sept., 1936 | 142.91 |
| | $1,378.62 |
| Average monthly income for five months | 123.74 |
| The property for 30 months prior to these proceedings netted | 3,567.65 |
| Average monthly income | 118.92 |

The schedules placed a value of $20,000 on the property.

Was the proposed plan, upon the facts stated, feasible?

■ Appellee's assurances of fulfilment of promises depend upon an expected increase in rentals. Doubtless, the court may take notice of the fact that there has been some increase in the rental of Chicago real estate, and it may also assume that this will continue. There are, however, many other factors bearing on this issue of feasibility.

The feasibility of any plan of reorganization presents problems which are highly practical. They involve the study of estimated receipts and expenditures, of the possibility of change in either, as well as questions of value. To illustrate: Such questions as these call for answer. Will values rise in the next five years? If they do generally, how much will they affect the value of this debtor's property? How much should one discount cost price? In view of the sorry record of Chicago 1927–29 building operations and the irresponsible flotation of securities worth less than par during the '20s with padded cost items

a common practice, should cost price not be entirely ignored in determining present day values? May an investor in Chicago real estate bonds reasonably expect his bonds to rise to par when the total bonded indebtedness equaled or exceeded the original padded cost of the building? To what extent should the court look to the year or the time when the building was erected as a factor of value? Likewise, *location* in a city like Chicago has a most important bearing upon future earnings and value. In some instances courts are asked to assume a value for 1928 or 1929 which has never been duplicated in any other period of the city's history. Commenting upon the proposal of frantic investors vainly seeking to recover their lost investment, Chief Justice Hughes, in the recent decision in the case of Tennessee Publishing Company v. American National Bank et al., 57 S.Ct. 85, 87, 81 L.Ed. ——, decided November 8, 1936, said:

"However honest in its efforts the debtor may be, and however sincere its motives, the District Court is not bound to clog its docket with visionary or impracticable schemes for resuscitation."

As to the recent market value of this real estate we are left in the dark so far as opinion evidence is concerned. It may well be so, for opinions of value at all times, and particularly today, vary greatly and are hard to reconcile.

Any plan of reorganization must be fair to both parties. The mortgagee is entitled to equal consideration with the mortgagor. While the collection efforts of the mortgagee may well be stayed for a reasonable time provided there exists a reasonable likelihood of her mortgage being paid at that time, it is manifestly unfair to postpone interest payment, repayment of moneys advanced to pay taxes for a period of five years, and leave the mortgagee's recovery of principal and interest to chance or speculative uncertainties based wholly on "hopes" born of wistful wishing, strong desires or urgent necessities. In the absence of facts to support hopes, there exists no sufficient support for a plan which postpones mortgagee's rights and remedies arising out of a past due secured indebtedness.

We are not prepared, however, upon the facts disclosed by the record in this case to reject the debtor's plan in view of its approval by the District Court. By that plan the court can and no doubt will protect the mortgagee if reimbursement for interest and back tax payments is not made. The net yearly rental of $1500 will cover taxes and the interest payments provided for in the plan and leave approximately $470. The debtor may supplement this income from outside sources, and the amount required to meet the back taxes each year will be less than $300. At the end of two years the back tax reimbursements will be at an end and the current taxes and all interest charges at 6% would be more than earned. All of this contemplates vigilance on the part of the court. The plan must not be viewed as a paper plan—a theoretical solution of a present pressing problem. If the obligations of debtor are not met or the default satisfactorily explained, action to protect mortgagee must follow immediately. This we think the plan contemplates.

As an appellate court we are not called upon to pass upon the feasibility of this plan as an original proposition. We may have grave doubts as to its feasibility. The determination of that matter was the District Court's function. He was in a better position than we (certainly in as good a position), and he found the plan was feasible. The evidence does not justify our setting aside this finding.

The decree is

Affirmed.