**O'CONNOR et al. v. MILLS et al.**

**No. 10662.**

Circuit Court of Appeals, Eighth Circuit.
July 8, 1937.

J. A. Tellier, of Little Rock, Ark., for appellants.

Harry B. Solmson, Jr., of Little Rock, Ark. (Max F. Goldberg, of Chicago, Ill.,

and J. W. House, of Little Rock, Ark., on the brief), for appellees.

Before WOODROUGH, THOMAS, and FARIS, Circuit Judges.

THOMAS, Circuit Judge.

This appeal is from a decree of the District Court dismissing a creditors' petition for reorganization of White & Black Rivers Bridge Company, a corporation, debtor, under section 77B of the Bankruptcy Act (11 U.S.C.A. § 207).

The appellants are four bondholders, owning $4,000 par value of a $400,000 bond issue of the company, and one unsecured creditor. Prior to the approval of the petition as properly filed, appellees Mills, Champlin, and Wilson, as members of a bondholders protective committee claiming ownership and control of $395,500 par value of the original $400,000 bond issue, and Counselman, Sherman, and Thresher, owners of a total of $50,000 par value of such bonds, filed a response opposing the approval of the petition on the grounds that (1) it did not comply with the provisions of the statute, and that (2) it was not filed in good faith. Upon the hearing it was stipulated in open court "that all the allegations * * * made in the petition of the creditors are correct, and the sole issue presented to the court is the question of good faith of the petitioners."

The good faith of the appellants in filing the petition was the only question finally decided by the District Court, and his adverse ruling upon that question is the only question presented upon appeal.

Section 77B, 48 Stat. 912, 49 Stat. 664, 965 (11 U.S.C.A. § 207), provides that "Upon the filing of such a petition or answer the judge shall enter an order either approving it as properly filed under this section if satisfied that such petition or answer complies with this section and has been filed in good faith, or dismissing it."

What constitutes good faith within the meaning of the statute was considered by the Supreme Court in Tennessee Pub. Co. v. American Nat. Bank, 299 U.S. 18, 22, 57 S.Ct. 85, 87, 81 L.Ed. —— wherein the Chief Justice, speaking for the court, said:

"Nor do we need to inquire as to the precise limits of the concept of 'good faith' as required by section 77B. Whatever these limits may be, the statute clearly contemplates the submission of a plan of reorganization which admits of being con-

firmed as 'fair and equitable' and as 'feasible.' However honest in its efforts the debtor may be, and however sincere its motives, the District Court is not bound to clog its docket with visionary or impracticable schemes for resuscitation. Subsection (f) of section 77B (11 U.S.C.A. § 207 (f) provides for the confirmation of a plan only if the District Judge is satisfied that '(1) it is fair and equitable and does not discriminate unfairly in favor of any class of creditors or stockholders, and is feasible.' These are prime conditions. Unless the District Judge finds that the plan has these qualities, he need go no further. Unless he so finds, he has no authority to proceed."

The District Court in the instant case, after a lengthy hearing, held that "there can be no reasonable or feasible or practical plan of reorganization submitted by the petitioners herein * * * "; and the court dismissed the petition "as insufficient to comply with the requirements of section 77B of the Bankruptcy Act."

■■■ Appellees contend that the court's finding that no feasible plan of reorganization of the debtor corporation could be effected under section 77B is conclusive upon this court. The question of good faith is, of course, a fact question, In re Augustyn (C.C.A.7) 87 F.(2d) 577, the determination of which is by the statute committed to the discretion of the District Court, Jahn v. Llewellin (C.C.A.7) 86 F.(2d) 588. However, his finding is reviewable on appeal by this court, but will not be set aside unless clearly shown to be erroneous. Brockett v. Winkle Terra Cotta Company (C.C.A.8) 81 F.(2d) 949, and cases there cited.

The appellants earnestly insist that the evidence conclusively establishes the good faith of petitioners, and that the court erred in dismissing the petition. They urge that good faith is shown by the need of reorganization of the corporation; by the intent and purpose of the statute to rehabilitate corporations and to preserve the rights of creditors and stockholders so far as it is feasible; by a definite prospect of reorganization; and by the fact that petitioners seek reorganization under 77B in order to supplant reorganization under the harsh equity receivership rule.

These contentions require a brief examination of the evidentiary facts upon which the trial court based his finding.

The decree, including the findings, discloses that the District Court based his conclusion that no feasible plan of reorganization under 77B could be effected upon the fact that since 1932 the corporation had been in the process of reorganization in an equity receivership and a foreclosure proceeding in his court, and upon the situation resulting from such proceedings. The same parties have been active in the litigation from the beginning. Two appeals in the foreclosure proceeding have been before this court. Bovay v. Townsend, 78 F.(2d) 343, 105 A.L.R. 359; O'Connor v. Townsend, 87 F.(2d) 882. The history of the debtor corporation and the factional contentions of the parties are largely set out in the opinions in those cases. Townsend, the trustee in the original bond issue of $400,000, instituted the foreclosure proceeding. That suit had proceeded to final sale of all the property of the debtor corporation, but not confirmation, at the time the petition under 77B was filed. The property of the corporation consisted principally of two toll bridges over two different rivers in Arkansas about 85 miles apart. After the beginning of the receivership proceeding, which antedated the foreclosure suit, appellees Mills, Champlin, and Wilson constituted themselves a bondholders protective committee, and circularized the bondholders, 357 in number. With the written consent and approval of the holders of $395,500 par value of the bonds, they organized a corporation called the Des Arc & Powhatan Bridge Company to be owned by the bondholders in proportion to their respective shares in the total bond issue of $400,000. Under the plan proposed, the committee were trustees and managers for the new corporation. At the final sale of the property in the foreclosure proceeding the new company bid in the assets for $110,000. In the instant case, the court found that the property is not worth in excess of that amount. The record before this court in Bovay v. Townsend, supra, indicated that if the property were valued on the basis of the average annual earnings over a five-year period (less depreciation) capitalized at 6 per cent., such value would have been $290,000. While petitioners allege in their petition that its value is $750,000, there is no testimony to support their optimism.

■■■ The judgment in the foreclosure suit is for $439,276, and there is no testimony that would justify a finding that the prop-

erty is worth that sum. The stockholders in, and the unsecured creditors of, the debtor corporation therefore have no interest in this proceeding. In re 620 Church St. Building Corp., 299 U.S. 24, 27, 57 S.Ct. 88, 89, 81 L.Ed. ——. There being no equity in the property, they have no interest to be protected.

The present proceeding first came to hearing before the court on October 25, 1935. After the submission of the testimony of the parties, the court granted an extension of thirty days to give petitioners an opportunity to secure the acceptance by the bondholders of their plan of reorganization, and to that end he directed appellee Mills and his attorney to furnish them a list of the bondholders. One of the points urged here is that Mills acted unfairly in this matter. Before furnishing the list, he circularized the bondholders himself, no doubt for the purpose of prejudicing them in favor of his plan and against petitioner's, called the Bovay plan. But the list was finally furnished and Bovay by letter and printed circular presented his plan and his contentions in a most attractive way and appealed for their approval. When the matter came on for further hearing on December 18, 1935, it appeared that petitioners had secured written approval of their plan from the holders of bonds in the amount of only $5,500 par value. Five persons holding bonds in the aggregate amount of approximately $10,000 joined the petitioners in requesting the court for a further extension of thirty days to consider the matter. On the other hand, Mills and his colleagues had secured an expression of approval of their plan of reorganization in the receivership proceeding and against the Bovay plan from holders of more than $300,000 par value of the bonds. Among those favoring the appellees' plan was a banking institution holding $92,500 par value of bonds.

■ It is further insisted that the court because of the superior fairness of the Bovay plan should have proceeded under subsection (b) (5), section 77B (11 U.S.C. A. § 207(b) (5). It is claimed that Bovay's plan could have been so modified that it would be feasible under that subsection without the consent of the bondholders. Since, however, the bondholders were the only interested parties, and since only an insignificant minority of them favored the proceeding, the court was justified in dismissing the petition on the ground that the plan in contemplation of the petitioners was not feasible.

The decree of the District Court dismissing the petition is affirmed.