**GRAY et al. v. UNION JOINT STOCK LAND BANK.**

Nos. 8250–8252.

Circuit Court of Appeals, Sixth Circuit.

June 28, 1939.

George S. Marshall, of Columbus, Ohio (Marshall & Marshall, of Columbus, Ohio, on the brief), for appellants.

Ralph G. Martin, of Columbus, Ohio (A. G. Masters, of Detroit, Mich., and Ralph G. Martin, of Columbus, Ohio, on the brief), for appellee.

Before HICKS, ALLEN, and HAMILTON, Circuit Judges.

HAMILTON, Circuit Judge.

These cases concern the proper construction of subsection (s) of Section 75 of the Bankruptcy Act, 11 U.S.C.A. § 203(s).

Appellant Leona Piatt Gray owns an undivided five-eighths; her husband, appellant Carl H. Gray, a one-eighth; and appellant Ralph Piatt, her brother, a one-fourth interest in 165 acres of land in Logan County, Ohio.

On May 1, 1927, appellants became indebted to the Ohio-Pennsylvania Joint Stock Land Bank of Cleveland, Ohio, in the sum of $12,000, and executed a mortgage on the above farm to secure its payment, and also on 97.23 acres, adjoining. The last tract was conveyed to Bertie Piatt on August 2, 1932, subject to the mortgage and in consideration that she pay $9,725 thereon.

On June 30, 1931, the mortgagee assigned its note to the appellee, the Union Joint Stock Land Bank of Detroit. On March 21, 1932, appellee obtained in the State Court of Ohio a judgment for $12,101.35, and an order of sale. The property was advertised for sale September 29, 1934, and on August 31, 1934, appellant Leona Piatt Gray filed her debtor's petition in this action under Section 75(a) to (r) of the Bankruptcy Act and secured an order restraining the sale, and a reference was had to the Conciliation Commissioner. She made an offer of composition and extension, which was rejected. The offer was a moratorium of all of her debts as to principal and interest for a period of two years from the date of the proposition.

On November 19, 1934, she amended her petition, and was adjudged a bankrupt under Section 75(s) of the Act. She dismissed her proceedings on May 27, 1935, after the Supreme Court, in the case of Louisville Joint Stock Land Bank v. Radford, 295 U.S. 555, 55 S.Ct. 854, 79 L.Ed. 1593, 97 A.L.R. 1106, declared this section to be unconstitutional.

On September 14, 1935, she filed a motion to reinstate under Section 75(s) as amended (49 Stat. 942) which was sustained April 9, 1937.

On June 20, 1937, she filed an amended petition under section 75(s) and a second reference was made to the Conciliation Commissioner, and the appraisers valued the 165 acres of land at $70 per acre and fixed a reasonable annual rental for her five-eighths, of $341 payable in two installments and she was given a three-years' ex-

tension for the payment of her indebtedness conditioned on prompt payment of the rent. She paid the first year's annual rental.

On January 18, 1938, appellant Carl H. Gray filed his petition under section 75(a) to (r) which was also referred to the Conciliation Commissioner. He did not cultivate the farm but rented it on a share basis. Since 1932, he has been engaged in the business of buying livestock on commission and used a part of the farm as a base for their inspection and temporary maintenance before shipment. He made an offer of composition providing for the payment of a sum equal to six per cent interest on the appraised value of his assets as fixed by appraisers to be appointed by the Conciliation Commissioner. His offer was rejected and on February 25, 1938, on his amended petition, he was adjudged a bankrupt under Section 75(s) and his undivided one-eighth interest in the real estate was appraised at $1,190.

On February 25, 1938, the appellant Ralph Piatt filed his petition under section 75(a) to (r) which was also referred to the Conciliation Commissioner. The first meeting of creditors was held March 18, 1938, the bankrupt refusing to attend. Appellee made a motion to dismiss on the ground that appellant Carl H. Gray had refused to obey the orders of the Court; thereupon, the debtor offered to comply with the Court's order and submit to examination.

On October 6, 1937, appellee moved to dismiss the proceedings as to the appellant Leona Piatt Gray, and on May 25, 1938, amended its motion and renewed it. On April 7, 1938, appellee moved to dismiss the proceedings as to the appellants Carl H. Gray and Ralph Piatt, and on January 16, 1939, the Court dismissed the proceedings as to all of the appellants, from which order each appeals.

The appellants seek a reversal on the sole ground that under the provisions of Section 75 of the Bankruptcy Act (11 U.S.C.A. § 203) they were entitled to an extension of time within which to pay their debts regardless of whether or not the offer of composition was in good faith.

All Acts of Congress are to be construed to give effect to the intention expressed by their words, but if it cannot be ascertained by applying to the language its abstract meaning, resort may be had to the object and purposes which the Congress had in mind in the enactment and in this connection we may consider the wrongs to be righted or the public good to be accomplished from the legislative declaration. In construing the Act here in question, its legal concepts must be brought into harmony with actualities.

Section 75 was intended to enable insolvent farm debtors or those unable to meet their obligations as they matured, to retain control of their property on turning over to their creditors its fair and reasonable market value in either money or its equivalent.

In order that this might be done without liquidating the estate at the depth of a nation-wide depression and sacrificing intangible values inherent in the operation of a farm as a going concern and to serve a broader economic purpose, a qualified extension of time was provided for the farmer to pay his debts. Broadly stated, before a farmer is entitled to an extension under the Act, the following must appear, (1) the debtor must have made a proposal to his creditors which includes (a) an equitable and feasible method of liquidation of the claims of the secured creditors and his own financial rehabilitation, (b) his proposal must be for the best interests of himself and creditors, (c) the proposal must be in good faith. (2) If the farmer fails to obtain acceptance of his good faith proposal by a majority in number and amount of all claims affected, he may have an extension under section 75(s) as amended (11 U.S.C.A. § 203(s). In re Coleman, D.C., 21 F.Supp. 923, affirmed in 6 Cir., 93 F.2d 1001.

The law should be construed and applied as to accomplish its purpose with due regard to the constitutional protection of creditors.

The purpose of the Act is not to deprive creditors of their security and give it to debtors but to confer judicial discretion in each case where the facts justify giving the debtor an equitable opportunity to liquidate his indebtedness in an orderly way, provided this may be done without an essential impairment of the rights of the secured creditor.

The good faith spirit of the Act contemplates that before the debtor is entitled to an extension, he must offer a fair and reasonable method of liquidating his secured indebtedness over the period of extension, which will leave no uncertainties.

■ The plan should provide for payments, equal to the fair value of the property at the date of adjudication, plus carrying and interest charges, minus the value of exempt property, to creditors in the order of their priority during, or at the end of, the period of extension. Ordinarily, bankruptcy offers of composition contemplate a distribution to the creditors based on the present value of the bankrupt's assets and usually creditors are satisfied if they receive on liquidation a sum equivalent to that.

■■ The lien debts are worth no more than the value of the property and any deficiency would be a dischargeable debt. It therefore follows that the lien creditor loses nothing so long as his debt is made secure to the extent of the value of the property. At the end of the extension period, under the provisions of the Act, the creditor may, if he so elects, require that his lien be discharged by a judicial sale in which event he would obtain the benefit of any increase in the value of the lien property due to improved economic conditions. The good faith of the debtor does not contemplate that he shall offer to pay the entire secured debt within the period of extension, nor does it follow that because presently the debt delinquencies of the farmer exceed the fair market value of his assets, that he is deprived of the benefits of the Act, but it must appear from the debtor's offer of composition or extension, that there is a reasonable probability, within the proposed extension period, of either refinancing or liquidating his secured indebtedness, to the extent of the value of his assets in lien, or refinancing or paying to his unsecured creditors the value of the property not in lien; otherwise, his offer lacks the inherent and essential elements of good faith. In re Anderson, D.C., 22 F.Supp. 928.

■ The contention of the appellants that the Court lacked jurisdiction to dismiss because appellant Leona Piatt Gray had theretofore been adjudged a bankrupt under section 75(s), her rental fixed and paid and the extension granted, is without merit. The benefits of this section may be obtained only by a debtor who has made a bona fide attempt and offer, but failed, to effect a composition under Section 75(a) to (r), 11 U.S.C.A. § 203(a–r).

■ If it appear at any stage of the proceedings that there is no reasonable probability of the rehabilitation of the farmer, nor of an equitable and feasible liquidation of his debts, the Court may bring the proceedings to an end and relegate the debtor to relief under the other provisions of the Bankruptcy Act.

As we construe its opinion, the Supreme Court decided this question adversely to appellant's contention in the case of Wright v. Vinton Branch of Mountain Trust Bank, 300 U.S. 440, 470, 57 S.Ct. 556, 561, 81 L.Ed. 736, 112 A.L.R. 1455, when it said:

"Paragraph 3 authorizes the court to have the property sold if 'at any time' the debtor should fail to comply with orders of the court issued under its power to require interim payments on principal, or otherwise in the course of its 'supervision and control' of his possession. Paragraph 3 also provides that 'if * * * the debtor at any time * * * is unable to refinance himself within three years,' the court may close the proceedings by selling the property. This clause must be interpreted as meaning that the court may terminate the stay if after a reasonable time it becomes evident that there is no reasonable hope that the debtor can rehabilitate himself within the three-year period."

Then follows this footnote (300 U.S. pages 462, 463, 57 S.Ct. page 562, 81 L.Ed. 736, 112 A.L.R. 1455): "This construction is in harmony with the requirement of good faith in the initiation of proceedings under section 75. Relief under section 75 (s) may be obtained only by one who has made a bona fide attempt, and has failed, to effect a composition under section 75(a) to (r), 11 U.S.C.A. § 203(a–r). The offer of composition must be in good faith (section 75(c), (i), 47 Stat. 1471, 1472), and if the debtor is beyond all reasonable hope of financial rehabilitation, and the proceedings under section 75 cannot be expected to have any effect beyond postponing inevitable liquidation, the proceedings will be halted at the outset. The practical administration of section 75 in the lower courts already affords ample evidence of the substantial protection afforded the creditor by this requirement of good faith in the initiation of proceedings under subsections (a)–(r). * * * It must be assumed that the situation of the present debtor was not beyond all reasonable hope of rehabilitation; else he could not have qualified to file his petition at the outset. Compare Tennessee Publishing Co. v.

American National Bank, 299 U.S. 18, 22, 57 S.Ct. 85, 81 L.Ed. 13."

■ Appellants contend that the part of the opinion adverse to their position is contained in the footnote and has no application. The opinion of a Court is usually no more than statements of fact and comment on the legal question under discussion and, while a footnote may sometimes make it chaotic and bewildering, it is as much a part of it as that in the body.

■ In the interpretation of writings generally, marginal notes are always considered in determining their meaning. Disregarding the Wright case, the overwhelming weight of authority supports the position that the debtor's failure to make serious efforts at adjusting his affairs with creditors will justify the dismissal of the proceedings. Compare In re Borgelt, D.C., 10 F.Supp. 113, affirmed in 7 Cir., 79 F.2d 929; Massey v. Farmers & Merchants National Bank & Trust Company, 4 Cir., 94 F.2d 526; Doak v. Federal Land Bank of Baltimore, 4 Cir., 99 F.2d 145; Large v. Metropolitan Life Insurance Company, 4 Cir., 103 F.2d 593; Donald v. San Antonio Joint Stock Land Bank, 5 Cir., 100 F.2d 312, 313; Bartels v. John Hancock Mutual Life Insurance Company, 5 Cir., 100 F.2d 813; In re Henderson, 5 Cir., 100 F.2d 820; Baxter v. Savings Bank of Utica, 5 Cir., 92 F.2d 404; Wilson v. Alliance Life Insurance Company, 5 Cir., 102 F.2d 365; Cresap v. Equitable Life Assurance Company, 7 Cir., 99 F.2d 722; Bender v. Federal Farm Mortgage Corporation, 8 Cir., 99 F.2d 252; Lemm v. Northern California National Bank, 9 Cir., 93 F.2d 709; Mortgage Guarantee Company v. Moser, 9 Cir., 95 F.2d 944; Hardt v. Kirkpatrick, 9 Cir., 91 F.2d 875; Bernards v. Johnson, 9 Cir., 103 F.2d 567; Heldstab v. Equitable Life Assurance Society, 10 Cir., 91 F.2d 655; Cf. Morrison v. Federal Land Bank of Louisville, 6 Cir., 105 F.2d 279, this day decided.

■ The record shows that appellants became delinquent in the payment of interest and amortization on their indebtedness in 1928 and that foreclosure was instituted in the State Court as early as March 4, 1931, which was subsequently dismissed; that during the pendency of these proceedings, interest of more than $3,500 has matured on the lien indebtedness and tax delinquencies on the property in the same period of more than $800.

The offer of composition and extension of appellant Leona Piatt Gray provided for an extension of her indebtedness only without the payment of any sum. The offer of appellant Carl H. Gray provided for the payment of six per cent interest for three years on the appraised value of the property. Appellant Ralph Piatt made no offer and refused to attend the first meeting of creditors. All reasonable inferences to be drawn from the evidence and the record indicate that appellants would be in their present financial difficulties at the end of any extension period within the provisions of the Bankruptcy Act, and there is no evidence on which the Court could base a conclusion that they now have, or would have at the end of an extension period, any equity in their property now covered by liens. We are therefore of the opinion that the lower Court did not abuse its discretion in terminating the debtors' proceedings. The orders and decrees of the District Court are affirmed.