### MORRISON v. FEDERAL LAND BANK OF LOUISVILLE et al.
#### Nos. 8202, 8203.

Circuit Court of Appeals, Sixth Circuit. June 28, 1939.

George S. Marshall, of Columbus, Ohio (Marshall & Marshall, of Columbus, Ohio, on the brief), for appellant.

John S. Grimes, of Louisville, Ky., Wilby G. Hyde, of Chillicothe, Ohio, and J. F. Williamson, of Louisville, Ky. (William C. Goodwyn, of Louisville, Ky., and Kenneth T. Stevens, of Chillicothe, Ohio, on the brief), for appellee Federal Land Bank of Louisville.

Luther B. Yaple and Wilby G. Hyde, both of Chillicothe, Ohio, for appellee Citizens Nat. Bank of Chillicothe.

Before SIMONS, ALLEN, and HAMILTON, Circuit Judges.

SIMONS, Circuit Judge.

This is an appeal from an order dismissing a farmer-debtor proceeding under § 75(s) of the Bankruptcy Law (the amended Frazier-Lemke Act, 11 U.S.C.A. § 203 (s), upon the confirmation of the report of a special master recommending dismissal on the ground inter alia that there is no reasonable probability of rehabilitation, and that the debtor is not able to protect the land and buildings against presently threatened waste.

Petitions were in the first instance filed under the original Frazier-Lemke Act by the appellant and her husband, Maurice R. Morrison, and were approved as properly filed. Upon the invalidating of § 75(s) by the decision in Louisville Joint Stock Land Bank v. Radford, 295 U.S. 555, 55 S.Ct. 854, 79 L.Ed. 1593, 97 A.L.R. 1106, proceedings were halted, but after the passage of the amended act the then District Judge reinstated the causes by general order of September 16, 1935. On December 28, 1935, Maurice Morrison died, and the proceedings in both cases, since consolidated, have been carried on by Florence Morrison in her own behalf and as her deceased husband's executrix. Upon March 31, 1936, she filed a petition asking for a stay of foreclosure and that she be permitted to proceed under amended § 75(s), met by motions of the appellees to dismiss. When her petition came on for hearing it was referred to a special master, upon whose findings of fact and conclusions of law the District Court, overruling all exceptions, dismissed the causes on August 11, 1938.

The Morrisons either jointly or severally owned three farms, subject to first and second mortgage indebtedness, in default for principal and interest, in the aggregate sum of $63,588. They owed back taxes amounting to $1,707. Chattels were encumbered to the extent of $900, and general claims approximated $8,000. The master found the aggregate value of the three farms to be $61,000; that the largest and most valuable was being subjected to serious damage by erosion from the Scioto River and the spread of Johnson grass; that the interests of the mortgagees were imperiled by the condition of the buildings on each of the farms, and that the appellant was not in financial position to operate the farms profitably or to prevent waste thereon.

The findings of the master are supported by substantial evidence and were approved by the court. The evidence contra does not persuade us of error therein, and we adhere to the familiar rule that concurrent findings of master and court will not be rejected in the absence of clear mistake.

Of the many legal contentions urged upon us in assailing and in support of the order, it is in our judgment necessary to consider but one. The appellant contends that having made a good faith offer of composition to creditors (not included in the record) which was rejected, and having thereafter filed a petition under amended § 75(s) for a three year stay of foreclosure proceedings and for possession of the mort-

gaged property upon a reasonable rental to be fixed by the court, there was no power in the court to dismiss her petition until she had had a reasonable time within which to demonstrate that she could rehabilitate herself financially and pay to the mortgagees the reasonable value of the property. She relies upon the language of paragraph 3, of § 75(s), which states: "If * * * the debtor at any time * * * is unable to refinance himself within three years," and the discussion of it in Wright v. Vinton Branch, 300 U.S. 440, 462, 57 S.Ct. 556, 562, 81 L.Ed. 736, 112 A.L.R. 1455, where it is said: "This clause must be interpreted as meaning that the court may terminate the stay if after a reasonable time it becomes evident that there is no reasonable hope that the debtor can rehabilitate himself within the three-year period." The argument advanced is that once the debtor has been permitted to proceed under § 75 (a–r), 11 U.S.C.A. § 203(a–r), has made thereunder a good faith offer of composition with his creditors which failed of acceptance, and thereafter files his petition under subsection (s) for an extension, his right to a stay of foreclosure proceedings is absolute and may neither be denied nor set aside unless he fails to comply with some order of the court pursuant to the section, or until a reasonable time has elapsed within which it has been demonstrated that he is without reasonable hope of rehabilitation.

We do not so read Wright v. Vinton, etc., supra. The constitutional validity of paragraph 3 was sustained, as its enactment in the first instance was secured, by a demonstration that it vested in the court at all times the power to liquidate the property when it was evident that there was no reasonable hope that the debtor could rehabilitate himself within a three year period. The observation that the clause must be interpreted to mean that the court might terminate the stay if that fact became evident after a reasonable time clearly does not exclude the right of the court to terminate the stay at an earlier period or to deny it at the outset. This is to be derived not only from the preceding and succeeding discussion of the opinion, "the stay provided for is not an absolute one," but likewise from the explanatory notes and the statements of the authors of the bill cited in support of the adjudicated construction of the terms of the Act.

In the note (300 U.S. page 462, 57 S.Ct. page 562, 81 L.Ed. 736, 112 A.L.R. 1455) it is said: "If the debtor is beyond all reasonable hope of financial rehabilitation, and the proceedings under section 75 [11 U.S.C.A. § 203] cannot be expected to have any effect beyond postponing inevitable liquidation, the proceedings will be halted at the outset." In the note in 300 U.S. on pages 464, 465, 57 S.Ct. on page 563, 81 L.Ed. 736, 112 A.L.R. 1455, Congressional assertion is recited to the effect that under the amended section the property is virtually in the complete custody and control of the court for all purposes of liquidation, and the comment of Senator Frazier, co-author of the bill: "The bill gives the court authority to sell the property, if it deems it advisable, at any time. The court may sell any part of it or all of it at any time before or during or after the 3 years." Wright v. Vinton, etc., is so understood in all Courts of Appeal wherein decisions have been brought to our attention. Bender v. Federal Farm Mortgage Corp., 8 Cir., 99 F.2d 252; Price v. Spokane Silver & Lead Co., 8 Cir., 97 F.2d 237; Massey v. Farmers & Merchants National Bank & Trust Co., 4 Cir., 94 F.2d 526; Pearce v. Coller, 3 Cir., 92 F.2d 237; O'Conner v. Mills, 8 Cir., 90 F.2d 665; Wilson v. Alliance Life Insurance Co., 5 Cir., 102 F.2d 365; Bernards v. Johnson, 9 Cir., 103 F.2d 567. Cf. Gray v. Union Joint Stock Land Bank, 6 Cir., 105 F.2d 275, this day decided. It was said in Wilson v. Alliance Life Insurance Company, supra [102 F.2d 366], "The law will not do an idle thing." So if it appears from the very beginning that there is no hope of rehabilitation, the granting of a stay can only imperil the security of the creditors and result in substantial loss to them without any corresponding benefit to the petitioner. This a court of equity will not decree except under specific command of the statute, and in our view there is none.

[3] That the appellant has no reasonable hope of rehabilitation is clearly established by the record. She is a widow, employed as a social service case investigator at $100 a month. She has no reasonably adequate farming tools, stock or equipment, and while occasional aid and counsel to her farmer husband may have technically qualified her to file her petition as a farmer, she is in no sense trained or experienced as such. In the record she characterized herself as a housewife. She is entirely without means, and was permitted upon verified petition to perfect and prosecute her appeal in forma pauperis. Concededly her only hope of meeting prescribed rentals is in

leasing the farms to share croppers, with no expectation of return to enable her to check preventable waste from erosion and the spread of fungus, requiring an outlay of approximately $5,000.

The order of dismissal is affirmed.